Good morning, may it please the Court, I'm Michelle Minkin on behalf of P.J. Lopez. I'd like to focus today on the issue raised in the first two arguments in the brief, namely that Mr. Lopez may have been convicted of a crime that he wasn't indicted for. The risk that this happened arose from the final jury instructions and that the instructions were something that were much belabored over by the District Court and there were some puzzles caused by a few things. One is that Mr. Lopez was indicted for receiving a stream of benefits in exchange for diverting, directing excess towing revenue to this one particular tow company. So it was a stream of benefits rather than any one particular incident of bribery. The other issue was that the specific benefits that the government alleged at trial formed this stream were not all really supported by evidence that they were connected to a quid pro quo for the towing revenue. And then finally, much confusion arose because of this Court's decision in Newell, which had recently been issued, which required unanimity instructions in certain circumstances and so the Court queried whether a unanimity instruction was required in this case. Now, what should have happened is a unanimity instruction should not have been given. The jury should have been instructed on the stream of benefits theory, specifically that the stream of benefits was exchanged for a pattern of official actions or a pattern of conduct by Mr. Lopez, the pattern of towing. Your Codice says that in addition to the unanimity instruction, an instruction was given on stream of benefits and it was within that context that the unanimity instruction, if you will, was a subcategory of the larger category. How do you respond to that? So to be sure, the word stream of benefits were used, but as the government remarked at trial, it was confusing. And I'll direct the Court's attention to the language. And the stream of benefits, by the way, was specifically defined by the Court and not in the part dealing with unanimity. The language that the Court says is, and this is at page 145 in the appendix that we've submitted, the Court says that it's alleged that the defendant solicited a stream of benefits from M&W towing in exchange for directing tows. And here's the stream of benefits that's alleged, says the Court. It's specifically the Suzuki, the Ford, the Nissan, and the Plow. That's the stream of benefits. And then the next sentence is, the government does not require that the defendant solicited all of these things. The government only has to prove that he solicited one of these things. So that he correctly solicited and demanded, accepted, or agreed to accept a stream of benefits that included at least one of them. So … And then the Court goes on to say, and this just strikes me as a matter of common sense, and when you deliberate, you ought to agree on what that benefit is or benefits are. And I'm having trouble seeing why that would confuse the jury. It seems to me it follows logically from the earlier instruction. I take it the government's position, but I'll ask the government, is that the unanimity instruction was not required because of earlier instructions given. But that there was no error whatsoever in Judge Wolf being extremely cautious and instructing the jury that they ought to be unanimous on what benefits were involved. I'm having trouble understanding what's wrong with that. Well, I'll be happy to respond. The unanimity instruction, it was not just sort of extra cautious. It had no place and it confused what the jury's task was. And here's why. The government may have said, gee, Your Honor, we think this is confusing. But from our point of view, I don't see how it was confusing. Well, if I may have the opportunity, that the unanimity instruction is required when any of these individual benefits could have constituted the offense in and of itself, this would be a different case. But the fact is that if Mr. Lopez was convicted just on the basis of one of these benefits, which I'm going to say the Suzuki because that was the one that was most clearly proven by the evidence, that was a different offense than what was charged. And the difference between this case and, say, Mueffelman or Muffelman, is that in that instances, each one constituted an offense because the federal jurisdictional element was satisfied with respect to all of them. This is a different kind of a statute where it was alleged that there were multiple unspecified benefits and that in a period from December to June of increased towing, that all of that business made this a federal offense. The jury was not asked whether just the snowplow constituted a federal offense where the federal government had an interest in it. In fact, they probably wouldn't have gotten that indictment and they might not have gotten the indictment with respect to the Suzuki. The charge was that this was an ongoing course of conduct and what the unanimity instruction did in combination with this confusing language about the stream of benefits theory. And incidentally, this court had recently issued McDonough, which gave some guidance about how to instruct on the stream of benefits theory, and that was not given here. Counsel, I share some of Judge Lynch's puzzlement about what you're really trying to argue. At some point, you seem to suggest that the problem with the way in which the judge instructed is that it did not require the jury to make some finding about the $5,000 jurisdictional amount that relates to what you call the transactional element. The business that was sent on to the towing company had to have a value of $5,000 or more. I don't understand how you link this requirement that there be unanimity as to one of the benefits that was conferred on your client to that $5,000 jurisdictional amount. First of all, is that the problem that you're positing? Yes, so the And how does this unanimity instruction impact the jury's assessment of that $5,000? So as simply as I can explain this, and I recognize that it's complicated, when the judge mentioned the stream of benefits and says it only has to be one benefit, and then goes on to describe in the unanimity instruction that you need to agree on one benefit, he has now focused the jury on agreeing on one benefit, rather than being unanimous that there was an agreement for a stream of benefits, which was in fact what had to be proven. And then the jury is told that any proven bribe, which I suggest, and I think a fair reading of these instructions is, that refers to the one benefit that they've just agreed unanimously was proven, that that satisfies the $5,000 jurisdictional element. The $5,000 has nothing to do with the value of the benefits conferred on the client. The $5,000 has to do with the value of the business that went to the towing company. I recognize that, of course, and that's very clear. But first of all, the same case that held that, Fernandez, also says that what's received in exchange for the towing business is relevant to determine the value of the towing business that was diverted to them. So if, you know, the problem here arises if Mr. Lopez was convicted of one transaction, and that was the court's problem, and that's the problem with the evidence. And if the bribery act was done after the Suzuki, then the bribery did not involve $5,000 worth of revenue, or at least that's the question for the jury. You know, the court is saying, where's the evidence this went beyond the Suzuki? Where's the evidence that this didn't end in December? And that's a real question based on the evidence at trial. How do we know that there was any agreement that went on, that this was some grand plan that both parties agreed to, and it was bribery from December to June? And that's the only way that I say that this becomes a federal case, perhaps. At least I can say that that's what the grand jury said. The grand jury did not indict for one Suzuki in December. I don't know if I've answered your question, but thank you for your time. Your Honors, and may it please the court, Jack Starcher, on behalf of the United States, the primary argument that Mr. Lopez raises on this appeal is this argument that the jury instruction delivered at the close of trial somehow resulted in a constructive amendment of the indictment. And I think the most direct answer to that question, I think that challenge fails for three reasons, but I think the most straightforward is the one identified by the court just now, which is that if you read the jury instructions actually given, there was no way that the jury could have convicted Mr. Lopez based only on the Suzuki, unless the jury also concluded that that Suzuki was part of an agreement to accept a larger stream of benefits. I think part of the complication that appears in these jury instructions comes from the nature of federal program bribery cases like this one, where you have two distinct moments in time that sort of matter. There's the moment in time when the agreement for the corrupt agreement is made, and then there's the moment in time at which that corrupt agreement may or may not come to fruition. And so here you have the initial agreement to accept a stream of benefits going forward, and then at some future time those benefits are actually provided as a part of that agreement. And I think that's what's reflected in these jury instructions. There's the initial instruction about the stream of benefits agreement itself, and then there's the follow-on instruction requiring the jury to find beyond reasonable doubt that a benefit was actually handed over as part of that agreement. Counsel, it seems to me there's some uncertainty in your brief about the necessity for giving this unanimity instruction. At one time, you seemed to say that it was simply unnecessary. Yet at another point in your brief, you suggest a rationale for it that somehow, if I understand it correctly, was that the defendant got something of value, not just some agreement that involved a stream of benefits, that in fact he got something of value. I don't understand why you feel the jury had to find that he in fact got something of value. Do I understand your argument correctly? I can clarify. The government's position is not that this jury, the government agrees that this unanimity instruction was not required. But as I think was mentioned earlier, the instruction was also not prejudicial. Just to provide clarity on what the government's position is as to this instruction, it was not required, but it was, you know, the judge decided to give it for a reason, and that reason I think was explained during the charge conference when the instructions were discussed. The judge indicated that he understood that you could have a case in which you had a stream of benefits agreement in which no benefits were ever received, because the agreement itself is the violation of the statute. But he said that that was never the theory of this case, and because this case always proceeded on the idea that benefits were actually handed over as part of that agreement, he decided to give this instruction. And again, to be perfectly clear, the government's position is that the unanimity instruction was not required and that this conviction could have been obtained without it. It was requested below and pursued below, I think out of an abundance of caution in light of some uncertainty as to how far this court's decision in Newell would reach. I think it was also requested. So, translating, Judge Walp thought on the indictment as charged. The government's theory did depend on a finding of benefits. You disagree on that characterization of the indictment, but if he is right about that, then the unanimity instruction was required. Am I correct? You're correct if that was to some, but I guess there's still some disagreement, because I think that if you look at the statute and what the statute makes a crime, it's an agreement to accept something of value, and nowhere in the statute is there any suggestion of those requirements and actually referred to certain benefits. And there does seem to be a disagreement between you and the defense about what happens when the government puts things into the indictment that the statute may not require. Right. And she says, well, the government's stuck then. It made the choice at the grand jury stage, and it has to prove that case. And you tell us, as I recall your brief, that no, that's not the law, that those are all sort of extraneous. Do we have to get into that question? This court does not have to get into that question. Of course we do, because you've got a problem of variance that pops up front and center then. There are due process considerations that seem to me to be obvious. Right. Well, I don't think the government's understanding of Mr. Lopez's argument in this case is not that he's not making a variance argument. I think the only argument made in the briefing was this constructive amendment argument. And while those are related concepts, they are, as you sort of note, conceptually different. Constructive amendment doctrine is about the grand jury's role in creating, crafting an indictment, whereas a variance is an entirely separate analysis that has to do with prejudice and it focuses on whether or not factual differences between the indictment and what's proved at trial cause some prejudice to the defense. And so I think, again, I don't take Mr. Lopez's making a variance argument, and I think maybe part of the confusion here is from that sort of missing piece. I don't think the government disagrees that if there was the inconsistency discussed between the indictment and what was allowed through the jury instructions, that that would be a variance, and then the proper analysis would be whether it was a prejudicial variance, and I think the answer to that is clearly no. But, again, the government doesn't understand. So we have no obligation to get the law right, is what you're saying? That's not what, no, that's not what I'm saying. I think in this case, as the jury instruction was given in this case, the unanimity instruction was in fact given, and the question whether or not it had to be given or it was just given sort of as a matter of the judge's discretion, therefore I think sort of becomes irrelevant because the instruction was given, the jury was told that they had to find beyond a reasonable doubt and unanimously that one particular benefit was accepted as part of this agreement. And, again, so I think to the extent there is any sort of inconsistency there, it isn't raised by the facts of this case. And then I would also just, you know, note that even assuming there was some sort of error in the instructions with respect to the unanimity instruction or the stream of benefits instructions, none of this was objected to at trial, so this is all subjected to plain error review, and I, as explained in the brief, the government's position is that there is no prejudice here, and certainly not the kind of prejudice that would require reversal under plain error. How did this case come up? I'm just curious whether it was the police department that noticed that one of its employees seemed to be favoring one particular tow lot over the other. I don't know the answer to that question. I know that the investigation began with a focus on to the, that the snowplow was the initial focus of the investigation, and it was the snowplow purchase that initially sort of raised suspicions about this, but as to exactly who noticed the snowplow or where that began, I'm not sure. It was sort of a low level of public corruption, and that doesn't mean it shouldn't be investigated. Right, and I think it does bear mentioning that there was evidence at trial suggesting that as much as this was in some sense low level, this affected people's lives in a very real way. There was testimony that, you know, one of the tow truck drivers for M&W actually stopped towing during these weeks because he was being asked to tow cars that were either minimally violating or not violating at all. There was testimony that he was being asked to go to an area outside of, I believe, a housing development and tow cars from there. So is there any indication this is a problem in other municipalities and the federal prosecution wants a sort of warning? I'm afraid I don't have an answer to that. I don't know. The parties stipulated to what the federal program was or stipulated that there was a federal program? That's correct. Does the record tell us what the program was? No, and I'm afraid I actually don't have the answer to that either beyond what was in the record. I'm not sure I understand, I think, your response to one of Judge Lynch's questions. If the indictment as brought forth by the government includes perhaps either an element or a means that you deem surplusage, is it your position that the government, even though it's surplusage, does have to address that, certainly if it's an element beyond a reasonable doubt, or if it's surplusage, they don't have to meet that burden? If it's actually surplusage, they don't have to meet that burden. I think there's some, whether or not if the indictment, sorry, can I answer that question? If the indictment allowed conviction in the way that Mr. Lopez says it does where just conviction based on the Suzuki alone, I think that would be a variance. I think the appropriate analysis for whether or not that was problematic would be the prejudicial variance standard. I don't know if that answers your question. Thank you.